

**U.S. Department of Justice**

United States Attorney
District of Maryland

Christina A. Hoffman
Assistant United States Attorney
Christina.hoffman@usdoj.gov

36 South Charles Street
Suite 400
Baltimore, MD 21201-3119

DIRECT: 410-209-4871
MAIN: 410-209-4800
FAX: 410-962-0716

USDC- BALTIMORE
'25 APR 15 PM 3:00

January 23, 2025

**BY EMAIL**

Julie M. Reamy, Esq.
210 Allegheny Avenue, Suite 110
Towson, Maryland 21204
juliereamy@gmail.com

      Re: *United States v. Minh Phuong Ngoc Vong*, Criminal No. DLB-24-0177

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (the "Agreement") that has been offered to your client, Minh Phuong Ngoc Vong (hereinafter the "Defendant"), by the United States Attorney's Office for the District of Maryland (the "Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Friday, February 21, 2025**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the Indictment charging him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The Defendant admits that the Defendant is, in fact, guilty of this offense, and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows.

Count One: Conspiracy to Commit Wire Fraud

    a. The Defendant and at least one other person entered into an unlawful agreement;

    b. The purpose of the agreement was to knowingly execute or attempt to execute a scheme or artifice to defraud and to obtain money, funds, assets or other property by means of materially false pretenses, representations, or promises; and

Rev. August 2018

c. The Defendant knowingly and willfully became a member of the conspiracy.

## Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Min. Prison | Max. Prison | Supervised Release | Max. Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1349 | N/A | 20 years | 5 years | $250,000 | 18 U.S.C. § 3013(a): $100 |

    a. *Alternative Fine*: If any person derived pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the Defendant, the Defendant may be fined not more than the greater of twice the gross gain or twice the gross loss.

    b. *Prison*: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    c. *Supervised Release*: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    d. *Restitution*: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    e. *Payment*: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    f. *Forfeiture*: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    g. *Collection of Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (i) the full amount of the fine or restitution is nonetheless due and owing immediately; (ii) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (iii) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant

exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that, by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" provisions below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts

of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.        If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced case, and the Court will find the Defendant guilty.

        h.        By pleading guilty, the Defendant also will be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that, if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.        The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991–98. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.        This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

Count One: Conspiracy to Commit Wire Fraud

        a.        The parties agree and stipulate that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(1), the base offense level for Count One (conspiracy to commit wire fraud) is 7.

        b.        The parties agree *not* to apply a 14-level upward adjustment pursuant to U.S.S.G. § 2B1.1(b)(1)(H) and Application Note 3(B), although the offense involved a loss that cannot reasonably be determined, and the offense involved a gain to the conspirators of more than

$550,000. Instead, the parties agree that a **14-level** upward adjustment is warranted pursuant to U.S.S.G. § 2B1.1 Application Note 21(A)(ii), because the offense caused or risked substantial non-monetary harm, namely, harm to the national security of the United States. The adjusted offense level is **21**.

   c. Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), a **2-level** upward adjustment is warranted, because the offense involved 10 or more victims, resulting in an adjusted offense level of **23**.

   d. Pursuant to U.S.S.G. § 2B1.1(b)(10)(B), a **2-level** upward adjustment is warranted, because a substantial part of the fraudulent scheme was committed from outside the United States, resulting in an adjusted offense level of **25**.

   e. This Office does not oppose a **2-level** reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional **1-level** decrease, in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offenses; (iii) gives conflicting statements about the Defendant's involvement in the offenses; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. The adjusted offense level is therefore **22**.

  7. The Defendant reserves the right to argue that a **2-level** downward adjustment is warranted because he is a zero-point offender under U.S.S.G. § 4C1.1. If applicable, the adjusted offense level would be **20**.

  8. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

  9. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

10. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, a reasonable period (and conditions) of supervised release, and/or a reasonable fine, considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing.

## Forfeiture

11. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

12. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

    a. The following items seized from the Defendant's residence in Bowie, Maryland on May 13, 2024:

        i. silver Apple Macbook Pro laptop, serial number GQDHQXP6TF;
        ii. black Dell laptop, model Latitude E7740;
        iii. iPhone 14 Pro Max, serial number CD6D7VXJYR;
        iv. gray laptop, model ANL5, serial number GD5095P23AJ927042;
        v. silver HP laptop, serial number 5CD236C9J5;
        vi. Lenova laptop, serial number R90ZDFCA;
        vii. two Canadian coins worth 200.00 Canadian dollars;
        viii. $13,715.00 in U.S. currency;
        ix. iPhone 11 Pro Max, serial number FK1ZL2Y7N70P with blue case;
        x. iPhone 15 Pro Max serial number FGX4XLQJ6M with black case; and
        xi. iPhone 14 Pro, serial number FGHGC6CZPH.

13. The Defendant agrees to consent to the entry of such an Order of Forfeiture and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of any such property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access

to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

16. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (a) this Office will be free from its obligations under this Agreement; (b) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C);

and (c) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Waiver of Appeal

19. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term or condition of supervised release, or order of restitution or forfeiture) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, or term or condition of supervised release), except as follows:

i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii. This Office reserves the right to appeal any sentence below the statutory minimum.

20. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned case and agrees not to file any request for documents from this Office or any investigating agency.

### Court Not a Party

21. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not

required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

22. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties, and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Sincerely,

Erek L. Barron
United States Attorney

By: *Christina Hoffman*
Christina A. Hoffman
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

01-30-25
Date

_____
Minh Phuong Ngoc Vong

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant. The Defendant advises me that the

Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_1/30/25_
Date

_[signature]_
Julie M. Reamy, Esq.

# ATTACHMENT A
# STATEMENT OF FACTS

*The undersigned parties stipulate and agree that, if this case had proceeded to trial, this Office would have proved the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Beginning at least in or about September 2020 and continuing until in or about May 2024, the defendant, Minh Phuong Ngoc **VONG**, a naturalized U.S. citizen living in Bowie, Maryland, conspired with John Doe, a/k/a "William James," a foreign national living in Shenyang, China, and one or more others, to defraud various U.S. companies into hiring **VONG** as a remote software developer through materially false representations about **VONG's** education, training, and work experience. Thereafter, Doe, posing as **VONG**, used **VONG's** computer access credentials to perform the software development work, thereby causing the U.S. companies to transmit salary payments via interstate wire communications to **VONG**, portions of which **VONG** caused to be transmitted by wire communications to overseas bank accounts for Doe and other conspirators. **VONG** installed remote access software on his computers to facilitate Doe's access to them, which also helped conceal Doe's location in China.

For instance, on January 30, 2023, Doe caused a fraudulent resumé in **VONG's** name to be submitted to Virginia-based technology company ("U.S. Company 1") for the position of web application developer, a position which required that the applicant be a U.S. citizen. The resumé falsely represented that **VONG** had earned a Bachelor of Science degree from the University of Hawaii and had 16 years of experience in the field of software development. On March 28, 2023, **VONG** participated in an online video job interview with the Chief Executive Officer of U.S. Company 1 in which **VONG** verified his identity and citizenship by holding up to the screen his Maryland driver's license and U.S. passport. U.S. Company 1 used this information to complete an I-9 form for **VONG** verifying his citizenship and eligibility for employment.

Following the video interview, U.S. Company 1 officially hired **VONG** as a software developer and assigned him to work on a contract for the Federal Aviation Administration (FAA) involving a particular software application. This software application was used by various U.S. government agencies to manage sensitive information regarding national defense matters. U.S. Company 1 shipped **VONG** a Macbook Pro laptop that he was to use in connection with his employment, and the FAA authorized him to receive a Personal Identity Verification ("PIV") card to access government facilities and systems. Between March 2023 and July 2023, Doe, while in China, used **VONG's** computer access credentials to perform the software development work and participate in online meetings with U.S. Company 1 and FAA representatives, all the while pretending to be **VONG**.

Doe and **VONG** communicated via an online messaging platform about the remote software developer job at U.S. Company 1, the steps **VONG** needed to take in order to get hired for the position, and various matters that arose during the time that **VONG** was pretending to perform—and Doe was actually performing—the job at U.S. Company 1. For instance, on March

24, 2023, **VONG** and Doe (using the moniker "William James") engaged in the following conversation over the online messaging platform:

  Doe:   btw bro, i need you to go and get piv card again… new job

  . . .

  **VONG**:  I [sic] for FAa piv card?

  Doe:   yes

  **VONG**:  What company is our joba [sic]

  Doe:   [U.S. Company 1]

As a result of **VONG's** fraudulent misrepresentations, U.S. Company 1 transmitted more than $28,000 in gross wages to **VONG** via interstate wire communications for work that **VONG** never performed. **VONG** knowingly caused portions of this money to be transmitted via wire communications to overseas bank accounts for Doe and other conspirators.

<u>May 13, 2024 Search Warrant & Interview</u>

On May 13, 2024, FBI agents executed a search warrant at **VONG's** residence in Bowie, Maryland. From the residence, the agents recovered the following items, among others:

  i.  silver Apple Macbook Pro laptop, serial number GQDHQXP6TF;
  ii.  black Dell laptop, model Latitude E7740;
  iii.  iPhone 14 Pro Max, serial number CD6D7VXJYR;
  iv.  gray laptop, model ANL5, serial number GD5095P23AJ927042;
  v.  silver HP laptop, serial number 5CD236C9J5;
  vi.  Lenova laptop, serial number R90ZDFCA;
  vii.  two Canadian coins worth 200.00 Canadian dollars;
  viii.  $13,715.00 in U.S. currency;
  ix.  iPhone 11 Pro Max, serial number FK1ZL2Y7N70P with blue case;
  x.  iPhone 15 Pro Max serial number FGX4XLQJ6M with black case; and
  xi.  iPhone 14 Pro, serial number FGHGC6CZPH.

**VONG** agreed to a voluntary interview with FBI agents. During the interview, **VONG** admitted that he met Doe via an online gaming platform and agreed to participate in the scheme to defraud U.S. companies by posing as a software developer and granting Doe his computer access credentials. **VONG** admitted that, in reality, he had no college degree or background in software development and did not perform any of the software development work for the U.S. companies with which he was employed. Instead, **VONG** allowed Doe to use **VONG's** computer access credentials in order to remotely perform software development work for the U.S. companies and U.S. government entities. **VONG** also mailed laptops to Doe in China on two occasions. **VONG** acknowledged that he knew Doe was not a U.S. citizen and was not eligible to perform the software

development work for the U.S. companies or U.S. government entities. **VONG** stated that he kept between 20% and 30% of the wages earned through the scheme and transmitted the remainder to bank accounts controlled by Doe and/or other conspirators.

Victims

Between 2021 and 2024, **VONG** used fraudulent misrepresentations to obtain employment with at least 13 different United States companies, who collectively paid **VONG** a total of more than $970,000 in salary for software development services that were, unbeknownst to them, performed by Doe and/or other overseas conspirators. The chart below shows the salaries paid to **VONG** by some of the defrauded companies during his period of employment with them:

| **Defrauded Company** | **Period of Employment** | **Salary Paid** |
|---|---|---|
| U.S. Company 1 | 03/28/2023 – 07/14/2023 | $28,324.33 |
| U.S. Company 2 | 09/28/2023 – 03/28/2024 | $44,292.36 |
| U.S. Company 3 | 07/10/2023 – 07/19/2023 | $4,829.55 |
| U.S. Company 4 | 10/25/2021 – 03/31/2023 | $156,203.79 |
| U.S. Company 5 | 05/08/2023 – 12/29/2023 | $67,200.00 |
| U.S. Company 6 | 10/31/2022 – 05/21/2024 | $170,715.34 |
| U.S. Company 7 | 11/12/2020 – 01/04/2022 | $99,701.29 |
| U.S. Company 8 | 03/06/2023 – 05/24/2023 | $28,086.12 |
| U.S. Company 9 | 01/17/2022 – 01/05/2023 | $158,752.81 |
| U.S. Company 10 | 05/22/2023 – 09/29/2023 | $43,801.43 |
| U.S. Company 11 | 04/04/2022 – 06/23/2022 | $29,545.13 |
| U.S. Company 12 | 02/20/2023 – 05/19/2023 | $44,588.25 |
| U.S. Company 13 | 09/04/2022 - 04/01/2023 | $63,846.41 |
| U.S. Company 14 | 08/08/2022 – 03/22/2023 | $37,651.52 |
| **TOTAL** | | $977,538.33 |

Throughout the relevant time period, **VONG** worked as a nail technician at Allure Nail Spa in Bowie, Maryland, earning roughly $20 per hour. According to Maryland wage records, during the first three quarters of 2021, **VONG** received wages exclusively from Allure Nail Spa, earning less than $30,000. However, beginning in the fourth quarter of 2021 and continuing through the third quarter of 2023, **VONG** received wages from multiple other U.S. companies, and the amount of his wages increased roughly ten-fold. The chart below shows **VONG's** wage records by year and employer source:

Rev. August 2018

3

## Wage records by Year and Employer Source

| Year | Allure Nail Spa | % of Total | Other Employers | % of Total | Total |
|---|---|---|---|---|---|
| 2021 | $ 29,921 | 67% | $ 14,815 | 33% | $ 44,736 |
| 2022 | $ 38,898 | 9% | $ 388,401 | 91% | $ 427,299 |
| 2023 | $ 28,827 | 6% | $ 439,132 | 94% | $ 467,959 |
| 2024 | $ 6,465 | 9% | $ 66,813 | 91% | $ 73,278 |
| | $ 104,111 | 10% | $ 909,161 | 90% | $ 1,013,272 |

*The year 2024 only includes wage record data up to Q4

Several of the defrauded companies contracted out **VONG's** services to United States government agencies, including the FAA, the Census Bureau, the Department of Agriculture, and the Department of the Interior. As a result of **VONG's** fraudulent misrepresentations, these government agencies unknowingly granted access to sensitive government systems to Doe and other overseas conspirators, who accessed those systems from IP addresses in China.

SO STIPULATED:

*Christina Hoffman*
Christina A. Hoffman
Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney and the interpreter. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

Ming Phuong Ngoc Vong
Defendant

I am Minh Phuong Ngoc Vong's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

Julie M. Reamy, Esq.
Counsel for Defendant